IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ELINOR KANNON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| GOLDSTONE FINANCIAL GROUP, | ) |
| MICHAEL PELLEGRINO and | ) |
| ANTHONY PELLEGRINO, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. This is an action to recover for the sale of unregistered securities. The securities were sold to plaintiff Elinor Kannon by respondents Goldstone Financial Group, LLC ("Goldstone") and Michael Pellegrino.

## PARTIES

2. Goldstone, an Illinois limited liability company, is owned and controlled by defendants Michael Pellegrino and Anthony Pellegrino.

3. Ms. Kannon resides in the Northern District of Illinois.

## JURISDICTION AND VENUE

4. This action arises under the Securities Act of 1933, 15 U.S.C. 77a *et seq.* ("Securities Act"). This Court has subject matter jurisdiction under 15 U.S.C. § 77v(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)and (2) because Defendants conduct business in the Northern District of Illinois and are subject to personal jurisdiction here, and the events giving rise to this cause of action occurred in the Northern District of Illinois.

## BACKGROUND

6. In 2017, Ms. Kannon was retired and wanted to invest some of her savings to generate income for her support. She saw an investment program on a Sunday morning CBS television show presented by Goldstone. At the time, Goldstone was a registered investment advisor and Michael and Anthony Pellegrino were a licensed investment advisor representatives and also licensed to sell securities by the State of Illinois.

7. Not being sophisticated in financial matters, Ms. Kannon contacted Goldstone and spoke with its principal, Michael Pellegrino. Pellegrino claims to be Goldstone's "Chief Investment Strategist."

8. After meeting with Pellegrino and entering an Investment Advisory Agreement with Goldstone on April 4, 2017, Ms. Kannon transferred her assets to Goldstone to be managed by Pellegrino, including $163,563.30 in her John Marshall Law School Defined Contribution Retirement Plan which was rolled into an IRA account with TD Ameritrade managed by Pellegrino and Goldstone.

9. In July 2017, after transferring Ms. Kannon's assets, Pellegrino met with her at his office in Oakbrook Terrace, Illinois. During the meeting, Pellegrino recommended she invest a portion of the funds in her IRA account in 1 Global Capital LLC, a Florida limited liability company ("1 Global" or the "Company"). Pellegrino represented that the investment would be in a high-yield short-term note issued by 1 Global and fully secured by 1 Global's assets "like a mortgage." Pellegrino further represented that the initial note investment would mature in May 2018 but could be automatically renewed and that Ms. Kannon would receive 6-10% consistent and predictable returns on her investment.

10. A one-page flyer Goldstone and the Pellegrinos created and mailed to their clients to solicit investments in 1 Global is attached as Exhibit A.

11. In reliance on Pellegrino's recommendation, Ms. Kannon elected to invest $50,000 in 1 Global. Pellegrino told Ms. Kannon the investment could not be made directly through her TD Ameritrade account, but that he would establish a new IRA account for her with Provident Trust Group in Las Vegas and transfer to the Provident Trust account from her TD Ameritrade IRA account $50,000 plus $525 for fees.

12. On July 26, 2017, Ms. Kannon executed documents prepared by Goldstone to open an IRA account with Provident Trust and transfer $50,525 to the Provident Trust account from her TD Ameritrade IRA account. On the same day, she executed a document entitled "Memorandum of Indebtedness" ("MOI") provided to her by Goldstone and Pellegrino, which reflected her $50,000 investment with 1 Global.

13. Because the transfer of $50,525 from Ms. Kannon's TD Ameritrade IRA account to the Provident Trust account was not completed until August 22, 2017, the MOI given to Ms. Kannon by Goldstone and Pellegrino was not countersigned by 1 Global until August 25, 2017. A copy of the fully executed August 25, 2017 MOI is attached as Exhibit B.

14. Ms. Kannon also received a year-end statement from Provident Trust which identified her investment in 1 Global as: "SECURED NOTES 50,000 PROMISSORY NOTE TO 1 GLOBAL CAPITAL LLC (NOTE1GLOBAL324)."

### SALE OF UNREGISTERED SECURITIES

15. Unbeknownst to Ms. Kannon, when Goldstone and Pellegrino solicited her to invest, 1 Global was engaged in the sale of unregistered securities to thousands of investors nationwide in what turned out to be an elaborate Ponzi scheme. From no later than February

2014 until July 27, 2018, 1 Global raised more than $287 million from over 3,400 investors through the sale of unregistered securities and used to fund its purported business of offering short-term financing to small and medium-sized businesses.

16. In late 2017 or early 2018, the Securities and Exchange Commission commenced an investigation of 1 Global. Michael Pellegrino was subpoenaed and deposed by the SEC as part of the investigation.

17. On July 27, 2018, shortly after the SEC commenced its investigation, 1 Global filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of Florida, Case No. 18-19121.

18. On August 23, 2018, the SEC sued 1 Global and its principal and affiliates in a civil enforcement action in the United States District Court for the Southern District of Florida, Case No. 18-cv-61991.

19. As revealed through the SEC and bankruptcy actions, to raise funds 1 Global used a network of brokers, registered and unregistered investment advisers, and other sales agents - to whom it paid millions in commissions - to offer and sell its unregistered securities.

20. Goldstone and its principals, Michael Pellegrino and Anthony Pellegrino, were one of 1 Global's largest, if not the largest, source of investors raising in excess of $30 million of new investments for 1 Global from their clients who were principally retirees like Ms. Kannon investing funds held in their individual retirement accounts.

21. Schedules filed in 1 Global's bankruptcy case show that from April 9, 2018 through July 10, 2018, a period of just ninety days, Michael Pellegrino was paid $316,079.01 in commissions by 1 Global and Anthony Pellegrino was paid $312,504.96.

22. Significant commissions were also paid to the Pellegrinos by 1 Global prior to April 2018, including in August 2017, when Ms. Kannon initially invested.

23. Based on a written agreement between an affiliate of the Pellegrinos and 1 Global, the Pellegrinos were paid a 4% per annum commission or "referral fee" for an investor's initial investment, plus an additional 2.25% commission or "referral fee" when the investment was renewed. None of this was disclosed to Ms. Kannon.

24. Ms. Kannon is informed and believes the Pellegrinos received well over $1 million in commissions or "referral fees" from 1 Global in just over one year.

25. On November 6, 2018, after learning of 1 Global's bankruptcy and fraudulent Ponzi scheme, Ms. Kannon made a demand on Goldstone and Michael Pellegrino for rescission of her investment in 1 Global. Her demand for rescission was ignored.

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

26. Plaintiff Elinor Kannon incorporates and realleges paragraphs 1 through 20 above as paragraph 21 of this Count I.

27. Section 2(a)(1) of the Securities Act, 15 U.S.C. §77b(a)(1), defines the term "security" as including any "note" or "evidence of indebtedness" or "investment contract."

28. The investment in 1 Global that Goldstone and Michael Pellegrino sold to Ms. Kannon and the MOI issued to Ms. Kannon by Goldstone, Pellegrino and 1 Global were a "security" as that term is defined in the Securities Act.

29. Section 5(a) of the Securities Act, 15 U.S.C. §77e(a) provides:

(a) Sale or delivery after sale of unregistered securities

Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

5

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

25. Section 5(c) of the Securities Act, 15 U.S.C. 77e(c), provides:

(c) Necessity of filing registration statement

It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

26. No registration statement was filed or in effect under the Securities Act regarding the securities issued to Ms. Kannon by Goldstone, Pellegrino and 1 Global, and no exemption from registration existed regarding those securities.

27. When Goldstone and Pellegrino solicited Ms. Kannon to invest in 1 Global, and issued to her the MOI, they directly and indirectly:

(a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or

(c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use of medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect as to such securities.

6

28. By reason of the foregoing, Goldstone and Pellegrino violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

29. Section 12(a)(1) of the Securities Act, 15 U.S.C. §77l(a)(1), provides:

Any person who—

(1) offers or sells a security in violation of section 77e of this title, . . .

shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

## COUNT II

### Controlling Person Liability for Violations Of
### Sections 5(a) and 5(c) of the Securities Act

30. Plaintiff Elinor Kannon incorporates and realleges paragraphs 1 through 29 above as paragraph 30 of this Count II.

31. Section 15(a) of the Securities Act, 15 U.S.C. §77o(a), provides:

(a) Controlling persons

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

32. Michael Pellegrino and Anthony Pellegrino each controlled Goldstone within the meaning of Section 15(a) of the Securities Act.

33. Each is liable jointly and severally with and to the same extent as Goldstone for its violations of Sections 5(a) and 5(c) of the Securities Act.

## COUNT III

### Violations of Section 5 of the
### Illinois Securities Law of 1953

34.     Plaintiff Elinor Kannon incorporates and realleges paragraphs 1 through 33 above as paragraph 34 of this Count III.

35.     Section 2.1 of the Illinois Securities Law of 1953, 815 ILCS 5/2.1 (the "ISL"), defines the term "security" as including any "note" or "evidence of indebtedness" or "investment contract."

36.     The MOI Goldstone, Pellegrino and 1 Global issued to Ms. Kannon were "securities" as that term is defined in Section 2.1 of the ISL

37.     Section 5 of the ISL provides:

All securities except those set forth under Section 2a of this Act, or those exempt under Section 3 of this Act, or those offered or sold in transactions exempt under Section 4 of this Act, or face amount certificate contracts required to be registered under Section 6 of this Act, or investment fund shares required to be registered under Section 7 of this Act, shall be registered either by coordination or by qualification, as hereinafter in this Section provided, prior to their offer or sale in this State.

815 ILCS 5/5.

38.     The securities issued by Goldstone, Pellegrino and 1 Global were not registered prior to their offer or sale to Ms. Kannon.

39.     Goldstone and Pellegrino offered to sell and sold to Ms. Kannon within the State of Illinois in non-exempt transactions, non-exempt securities not registered under the ISL.

40.     By reason of the foregoing Goldstone and Pellegrino violated Section 5 of the ISL.

41.     Section 13 of the ISL provides:

8

> Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer, internet portal, or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter, dealer, or internet portal is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser as follows:
>
> (1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale; or
>
> (2) if the purchaser no longer owns the securities, for the amounts set forth in clause (1) of this subsection A less any amounts received by the purchaser for or on account of the disposition of the securities.
>
> If the purchaser shall prevail in any action brought to enforce any of the remedies provided in this subsection, the court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney against the defendant.

815 ILCS 5/13.

42. Goldstone, Michael Pellegrino and Anthony Pellegrino were issuers, controlling persons, dealers or other persons by or on behalf of whom the sale to Ms. Kannon was made, or were salespersons who participated or aided in making the sale, or were officers and directors of Goldstone who participated or aided in making the sale of unregistered securities. As such Goldstone and the Pellegrinos are liable to Ms. Kannon under Section 13 of the ISL.

## COUNT IV

### Breach of Fiduciary Duty

43. Plaintiff Elinor Kannon incorporates and realleges paragraphs 1 through 42 above as paragraph 43 of this Count IV.

9

44. As Ms. Kannon's investment advisors, Goldstone and Pellegrino owed her the highest standard of fiduciary duty and were required to provide disinterested advice and recommend to her only investments suitable for her and in her best interests.

45. As a fiduciaries, Goldstone and Pellegrino were also required to disclose to Ms. Kannon all material facts concerning her engagement of them and the investments they recommended and were required to avoid conflicts of interest or overreaching or taking unfair advantage of Ms. Kannon's trust.

46. In recommending to Ms. Kannon she invest in 1 Global securities, which Goldstone and Pellegrino knew or should have known were unregistered, illegal and inappropriate for Ms. Kannon, Goldstone and Pellegrino were motivated by and acted solely in their own self-interests, greed and avarice and in complete and utter disregard for Ms. Kannon's safety, best interests and well-being.

47. By recommending to Ms. Kannon an investment in inappropriate, unregistered and illegal 1 Global securities, and by concealing and failing to disclose to her they stood to reap substantial commissions from the sale of the 1 Global securities, Goldstone and Pellegrino knowingly, intentionally and recklessly breached their fiduciary duty to Ms. Kannon and caused her significant financial and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Find that respondents Goldstone and Michael Pellegrino each violated Section 5(a) and 5(c) of the Securities Act and that Ms. Kannon is entitled to recover from them, jointly and severally, the consideration she paid for the security sold to her, with interest, less any income she received;

B. Find that respondent Michael Pellegrino and Anthony Pellegrino are "controlling persons" under Section 15(a) of the Securities Act and are liable to Ms. Kannon's for Goldstone's violations of Section 5(a) and 5(c) of the Securities Act and that Ms. Kannon is entitled to recover from them, jointly and severally, the consideration she paid for the security, with interest, less any income she received;

C. Find that Goldstone, Michael Pellegrino and Anthony Pellegrino violated Section 5 of the ISL or aided and abetted violations of Section 5, and that Ms. Kannon is entitled to rescind the purchase of the security sold to her and recover from Goldstone and the Pellegrinos, jointly and severally, the full amount paid for the security, with interest from the date of payment for the securities at the rate of 10% per annum, less any income she received;

D. Find that respondents Goldstone and Michael Pellegrino knowingly, intentionally and recklessly breached their fiduciary duties to Ms. Kannon and are liable to her for compensatory damages in the amount she paid for the security, plus interest, plus punitive damages in an amount three times the compensatory damage award;

E. Award Ms. Kannon recessionary and/or compensatory damages;

F. Award Ms. Kannon interest on the amount she paid for the securities;

G. Award Ms. Kannon punitive damages;

H. Award Ms. Kannon her costs of suit, including reasonable attorneys' fees; and

I. Grant such other or further relief as the Court deems just.

PLAINTIFF DEMANDS TRIAL BY JURY.

ELINOR KANNON

By: _____
One of her attorneys

Michael H. Moirano
**MOIRANO GORMAN KENNY, LLC**
135 S. LaSalle Street, Suite 2200
Chicago, Illinois 60603
(312) 614-1260

Robert Handley
**BURKE & HANDLEY**
799 Roosevelt Road, Bldg. 6, Suite 108
Glen Ellyn, Illinois 60137
(630) 852-9197